**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                          :

STEVEN MINCK,               :

                         :     Civil Action No.:06-4263(FLW)

            Plaintiff,      :

                         :          **OPINION**

      v.                    :

                         :

MICHAEL ALAIMO, <u>et al.</u>,    :

                         :

            Defendants.    :
_____ :

<u>**WOLFSON, United States District Judge**</u>:

        Before the Court are motions for summary judgment filed by Defendants Officer Michael

Alaimo, Officer Gregory Torchia, Chief Michael Haar, Officer Anthony Pecelli, Officer Colin

D'Anna, the Borough of Avon by the Sea ("Borough") and the Borough of Avon by the Sea

Police Department ("Police Department")(collectively, "Defendants").  Plaintiff Steven Minck

has failed to submit any opposition papers, despite repeated opportunities provided by the

Court.[1]  Defendants move to summarily dismiss Plaintiff's four-count Complaint, which asserts

claims pursuant to § 1983 and other state law claims.  For the foregoing reasons, the Court will

grant Defendants' motions in their entirety.

_____

[1] This case has a tortured history as explained by the Court on the record during the motion hearing on June 17, 2008. Briefly summarizing the circumstances, the parties were instructed by the Court during a telephone conference on May 30, 2008, to appear in-person for oral argument in connection with the within motions. The Court also instructed Plaintiff's counsel to have Plaintiff, Mr. Minck, present at the hearing on June 17, 2008. In fact, a letter dated June 4, 2008 was sent to all counsel memorializing the details of the conference. Plaintiff was also given an opportunity to file for leave to oppose Defendants' motions. Not only has the Court not received the submission, Plaintiff and Plaintiff's counsel failed to appear in court for the hearing. Hours later, on the same date, the Court received representation from Plaintiff's counsel that Plaintiff no longer wishes to prosecute his claims. Nevertheless, the Court having already concluded on the record that Plaintiff's claims have no merit, the Court will set forth its reasoning in this Opinion.

**Background**

Due to the fact that Plaintiff, Steven Minck, ("Plaintiff") failed to oppose the motions for summary judgment, the following facts are taken from Defendants' Statements of Undisputed Facts. The events leading to Plaintiff's arrest and imprisonment took place on September 2, 2006. (Defendant Haar Statements ¶ 18). Prior to that day, Plaintiff unofficially complained to the Monmouth County Prosecutor's Office that the Borough of Avon by the Sea Police Department officers were pulling over drivers into the parking lot of Plaintiff's marina. (Id. ¶ 3). Plaintiff spoke with Captain Haar who stated that the department would see what it could "work out." (Id. ¶ 7).

On September 2, 2006, Plaintiff arrived home to find that a car with a flat tire was parked in the parking lot of his marina and he blocked it in with his own truck. (Defendants Alaimo and Torchia Statements ¶ 3). When Plaintiff phoned the police station he advised the dispatcher that he did not want anyone to come onto his property and tow the car (Id. ¶ 3) and as a result the dispatcher then sent three officers to the marina (Id. ¶ 4). Plaintiff refused to move his truck, and when he called the State Police, officers were sent to observe the situation. (Id. ¶ 4). When Plaintiff finally came outside he was handcuffed and arrested. (Id. ¶ 5). Officer Alaimo transported Plaintiff to the station (Defendant Haar Statements ¶ 18) and Defendants claim that at no point in time did Plaintiff complain of injuries (Id. ¶ 19). Once at the station's holding cell, Officer Torchia approached Plaintiff and asked if he was injured; Plaintiff responded that he was. (Id. ¶ 21). Immediately thereafter, Officer Torchia called an ambulance and Plaintiff was taken to Jersey Shore Medical Center (Id. ¶ 23) where he was only treated in the emergency room and not admitted (Defendants Pecelli and D'Anna Statements ¶ 14). Following this hospital visit, the record does not reflect that Plaintiff was further treated for any of his injuries,

although he alleges, without proof, that his dental bridge was dislodged and he was treated by Affordable Denture Care in Harrisburg, Pennsylvania. (Id. ¶¶ 16-19).  Plaintiff was charged with obstruction of justice, resisting arrest, false public alarms, false reports to law enforcement authorities and disorderly conduct. (Defendants Alaimo and Torchia Statements ¶ 7). Plaintiff pled not guilty, but was convicted in municipal court of obstructing administration of the law, resisting arrest and filing a false report,  while the remaining charges were merged. (Id. ¶ 7).

## Plaintiff's Claims

Plaintiff alleges four separate counts against all named defendants. In the First Count, brought under 42 U.S.C. § 1983, Plaintiff alleges violations of his Fourth Amendment rights by way of malicious prosecution, false imprisonment and defamation. He claims that Defendants falsely accused him of violating New Jersey State criminal laws and proceeded with an unlawful arrest and imprisonment as a result of those false accusations. Plaintiff alleges that the purpose of the arrest was to cover up Defendants' own ongoing unlawful acts, but does not specify any further as to what those alleged acts entail.

In his Second Count, Plaintiff alleges excessive force and assault and battery on the part of all named Defendants, pursuant to the Fourth Amendment as well as the Eighth Amendment. He claims that after he was unlawfully detained, Defendants used physical force that was so grossly excessive that it constituted cruel and unusual punishment.

The Third Count alleges that Defendants failed to administer medical treatment in a timely manner and were deliberately indifferent to Plaintiff's serious medical needs. Plaintiff states in his Complaint that during and after his arrest Defendants violated his Eighth Amendment rights by failing to provide him adequate medical treatment.

Finally, Plaintiff contends that his arrest and charges were retaliatory acts for his past filing of administrative charges against the Police Department, in violation of his First and Fourth Amendment rights.

Defendants have moved for summary judgment. Plaintiff, represented by counsel, has not opposed any of the motions.

## Discussion

### I.  Summary Judgment Standard

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000). In deciding whether summary judgment should be granted, the Court considers "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," Fed. R. Civ. P. 56(c), and construes all facts and inferences in the light most favorable to the nonmoving party. Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002). The Court's function "at the summary judgment stage . . . is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). To successfully defend against a motion for summary judgment, a plaintiff cannot merely rely on the unsupported allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in his favor. Id. at 252.

If the non-movant fails to oppose the motion for summary judgment, Rule 56(e) provides that the Court may only grant the motion for summary judgment "if appropriate." See, e.g., Anchorage Assoc. v. V.I. Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990); see also Damiano

v. Sony Music Entm't, 975 F. Supp. 623, 627 (D.N.J. 1996) (granting summary judgment motion because plaintiffs argument was unopposed, and thus no genuine issue of material fact was created). When "the non-moving party fails to oppose the motion for summary judgment by written objection, memorandum, affidavits and other evidence, the Court will accept as true all material facts set forth by the moving party with appropriate record support." Carp v. Internal Revenue Serv., 2002 U.S. Dist. LEXIS 2921, at *2 (D.N.J. Jan. 28, 2002) (quoting Anchorage Assoc., 922 F.2d at 175). Even if a record contains facts that might provide support for a non-movant's position, "the burden is on the [non-movant], not the court, to cull the record and affirmatively identify genuine, material factual issues sufficient to defeat a motion for summary judgment." Morris v. Orman, No. 87-5149, 1989 U.S. Dist. LEXIS 1876 at *8 (E.D. Pa. Mar. 1, 1989) (citing Childers v. Joseph, 842 F.2d 689 (3d Cir.1988)); see also Atkinson v. Cty. of Phila., 2000 U.S. Dist. LEXIS 8500, 2000 WL 793193, at *5 n. 8 (E.D. Pa. June 20, 2000). Here, Plaintiff has failed to oppose the present motion, despite this Court providing him with notice of the need to respond.

### II. Municipal Liability

A municipality cannot be held liable under 42 U.S.C. § 1983 on a respondeat superior theory of liability. Monell v. Department of Social Services, 436 U.S. 658, 694 (1978). Instead, when a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom. Id.; Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996). Thus, although the municipality may not be held liable for a constitutional tort under § 1983 on the theory of vicarious liability, it can be held responsible as an entity when the injury inflicted is permitted under its adopted policy or custom.

Monell, 436 U.S. at 694.  The Supreme Court's holding and reasoning in Monell have created a two-path track to municipal liability under § 1983, depending on whether the allegation is based on municipal policy or custom.  See Pembaur v. City of Cincinnati, 475 U.S. 469, 481, n.10 (1986).

> The Third Circuit has articulated the distinctions between these two sources of liability:

> > A government policy or custom can be established in two ways. Policy is made when a "decisionmaker possessing final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict. A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well-settled" as to virtually constitute law.

Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted); see also Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990).

An individual's conduct implements official policy or practice under several types of circumstances, including when (1) the individual acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, (2) the individual himself has final policy-making authority such that his conduct represents official policy, or (3) a final policy-maker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the government, or by ratifying the conduct or speech after it has occurred. See, generally, Pembaur, 475 U.S. at 478-84 ; Laverdure v. County of Montgomery, 324 F.3d 123, 125-26 (3d Cir. 2003).

An individual's conduct proves to be a custom through evidence of knowledge and acquiescence.  See Fletcher v. O'Donnell, 867 F.2d 791, 793 (3d Cir. 1989), cert. denied, 492 U.S. 919 (1989). Plaintiff "may be able to recover from a municipality without adducing evidence of an affirmative decision by policymakers if able to prove that the challenged action

was pursuant to a state 'custom or usage.'" <u>Pembaur</u>, 475 U.S. at 484. Although "[t]he Supreme Court has not fully developed the meaning of 'policy' in this context . . . it is sufficient that the wrong results from a practice – not an isolated act . . . ." <u>Anela v. City of Wildwood</u>, 790 F.2d 1063, 1067 (3d Cir. 1986) (citing <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 821 (1985)). Therefore, "municipal liability under § 1983 cannot be inferred from a single instance of police misconduct by a non-policy making employee." <u>Brown v. City of Camden</u>, No. 03-1303, 2006 U.S. Dist. LEXIS 56215, at *9 (D.N.J. July 27, 2006).

In this case, Plaintiff fails to allege in his Complaint that there is either a custom or policy in place that led to the occurrences on September 2, 2006. Moreover, the Complaint does not specifically aver any liability attributable to the Borough or the Police Department. Importantly, Plaintiff's Complaint simply focuses on the events pertaining to his arrest, thus failing to allege either a custom or policy executed by the Police Department or the Borough.

Even if Plaintiff's Complaint can be read to allege claims against the Police Department or the Borough, no custom or policy could connect them to Plaintiff's alleged injuries. To reiterate, in order to succeed against both the Borough and the Police Department, Plaintiff must first show the existence of a custom, then "attribute it to the City itself, and show a causal link between the execution of the policy and the injuries suffered." <u>Losch v. Borough of Parkesburg, P.A.</u>, 736 F.2d 903, 910 (3d Cir. 1984). Plaintiff's First Count merely alleges that with regard to malicious prosecution, false imprisonment and defamation, his Fourth and Fourteenth Amendment rights were violated. It is difficult for the court to find from this particular allegation any custom that the Police Department or the Borough may have followed that would support liability for these three claims. If Plaintiff were to allege specifically that it is police custom to arrest and prosecute people without a valid and reasonable cause, the claims against the Police

Department and the Borough would arguably be sufficient. However, Plaintiff alleges only one incident (his own) of arrest, not multiple, that could possibly support this allegation. Furthermore, this allegation does not save Plaintiff's claims against the municipal entities because he was later convicted of the charges in municipal court.

Similarly, Plaintiff's Second Count of excessive force and assault and battery and his Third Count of failure to administer medical treatment both fail for the reasons set forth above. Like the First Count, Plaintiff alleges his arrest alone as evidence of a custom, which is insufficient because "a single instance of police misconduct" cannot infer municipal liability. Brown, 2006 U.S. Dist. LEXIS 56215 at *9. Moreover, even if such an incident could be construed as a custom, Plaintiff has failed to prove the existence of any constitutional violations because he cannot sustain his claims of excessive force or failure to administer medical treatment, as will be discussed later in this Opinion.

Plaintiff's Fourth Count of retaliation also fails to withstand summary judgment. Plaintiff cannot prove the necessary elements of retaliation, as discussed later in this Opinion. However, even if he could establish the required factors, Plaintiff cannot sustain the municipal liability claim. In order to do so Plaintiff would have to provide proof of a custom, yet this is the only instance he is alleging. Therefore, it cannot be a custom as described under the relevant case law.

These evaluations, coupled with Plaintiff's lack of opposition and no genuine issue of material fact, lead to the Court's conclusion that the Borough of Avon by the Sea and the Police Department summary judgment motions should be granted. The Court will now turn to the claims against the Defendant police officers.

### III.  Qualified Immunity

The Third Circuit has explained the legal framework for evaluating claims of qualified

immunity:

> When an officer's actions give rise to a § 1983 claim, the privilege of
> qualified immunity, in certain circumstances, can serve as shield from suit.
> The primary purpose of affording public officials qualified immunity, thus
> insulating them from suit, is to protect them "from undue inference with
> their duties and from potentially disabling threats of liability." The privilege
> of qualified immunity, however, can be overcome when state officials
> violate "clearly established statutory or constitutional rights of which a
> reasonable person would have known."

Wright v. City of Philedlphia, 409 F.3d 595, 599-600 (3d Cir. 2005) (citations omitted).

The Supreme Court has recently re-confirmed the analytical framework for determining

when the privilege of qualified immunity has been overcome:

> In resolving questions of qualified immunity, courts are required to resolve
> a "threshold question: Taken in the light most favorable to the party
> asserting the injury, do the facts alleged show the officer's conduct violated
> a constitutional right? This must be the initial inquiry." Saucier v. Katz, 533
> U.S. 194, 201 (2001). If, and only if, the court finds a violation of a
> constitutional right, "the next, sequential step is to ask whether the right was
> clearly established . . . in light of the specific context of the case." Ibid.
> Although this ordering contradicts "[o]ur policy of avoiding unnecessary
> adjudication of constitutional issues," United States v. Treasury Employees,
> 513 U.S. 454, 478 (1995) (citing Ashwander v. TVA, 297 U.S. 288, 346-
> 347 (1936) (Brandeis, J., concurring)), we have said that such a departure
> from practice is "necessary to set forth principles which will become the
> basis for a [future] holding that a right is clearly established." Saucier,
> supra, at 201.

Scott v. Harris, 127 S. Ct. 1769, 1774 (2007).

The second step requires further elaboration. "To be clearly established for purposes of

the qualified immunity analysis, the contours of the right must be sufficiently clear such that a

reasonable official would understand that what he is doing violates that right." Hughes v.

Shestakov, Docket No. 00-6054, 2002 WL 1742666, at *4 (E.D. Pa. Jul. 22, 2002) (citing Karnes

v. Skrutski, 62 F.3d 485, 492 (3d Cir. 1995)). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202 (citation omitted). The analysis of whether a right was "clearly established" "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" Curley v. Klem, 499 F.3d 199, 207 (3d Cir. 2007) (quoting Saucier, 533 U.S. at 201).

Thus, qualified immunity gives officers or officials room to make reasonable mistakes about the legality of their actions:

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

Saucier, 533 U.S. at 205.

In other words, "qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." Id. at 202 (citation omitted).

### A.  Count I- Malicious Prosecution, False Imprisonment, Defamation

The First Count of Plaintiff's Complaint alleges malicious prosecution,[2] false imprisonment[3] and defamation,[4] in violation of his Fourth and Fourteenth Amendment rights. Each of these claims fails on its face due to the fact that Plaintiff was convicted in the municipal court for the charges arising out of his arrest.[5]

In particular, for a malicious prosecution claim, the municipal proceeding must have ended in Plaintiff's favor, which it did not.  The false imprisonment claim fails because an arrest that had probable cause cannot be the source of such a claim.  Indeed, the municipal court found that Plaintiff was obstructing the officers' ability to properly do their jobs by not allowing the impound truck to tow the stranded car. (See Avon Municipal Court Certified Disposition).[6] As such, it logically follows that the circumstances surrounding the arrest were "sufficient to warrant a prudent man in believing that [Plaintiff] had committed or was committing an

---

[2] "To prevail in a Section 1983 [] malicious prosecution action, a plaintiff must show: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." DiBella v. Borough of Beachwood, 407 F.3d 599, 601 (3d Cir. 2005) (citation omitted).

[3] "Where the police lack probable cause to make an arrest, the arrestee has a claim under §1983 for false imprisonment based on a detention pursuant to that arrest." O'Connor v. City of Philadelphia, 233 Fed. Appx. 161, 164 (3d Cir. 2007) (citations omitted).

[4] "To state a claim, the plaintiff must prove: (1) that the defendant made a defamatory statement of fact; (2) concerning the plaintiff; (3) which was false; (4) which was communicated to persons other than the plaintiff; and (5) fault." Taj Mahal Travel, Inc. v. Delta Airlines, Inc., 164 F.3d 186, 189 (3d Cir. 1998) (citations omitted). "A defamatory statement is one that is false and injurious to the reputation of another or exposes another person to hatred, contempt or ridicule or subjects another person to a loss of the good will and confidence of others." Romaine v. Kallinger, 109 N.J. 282, 289 (N.J. 1988) (citation omitted) (internal quotation marks omitted).

[5] The Supreme Court case of Heck v. Humphrey, 512 U.S. 477 (1994), addressed the very issue of a plaintiff bringing claims that would negate his or her municipal court conviction. The Third Circuit applied the Heck decision in 2005, and held that "a § 1983 action that impugns the validity of the plaintiff's underlying conviction cannot be maintained unless the conviction has been reversed on direct appeal or impaired by collateral proceedings." Gilles v. Davis, 427 F.3d 197, 209 (3d Cir. 2005). Here, Plaintiff's claims of malicious prosecution, false imprisonment and defamation fail because his conviction in municipal court is valid. Thus, so long as Plaintiff remains guilty of the charges for which he was arrested, the Court cannot draw any inferences in his favor that would directly contradict the holding of the municipal court pursuant to Heck.

[6] "An arrest made without probable cause creates a cause of action for false arrest . . . ." O'Connor v. City of Philadelphia, 233 Fed. Appx. 161, 164 (3d Cir. 2007) (citations omitted). Plaintiff did not allege false arrest in his complaint. However, if he had it would fail for the same reason as false imprisonment: there was probable cause for the arrest.

offense." Wright, 409 F.3d at 602 (citations omitted).  So long as the officers has reason to believe that Plaintiff was committing a crime, which in this case was obstruction of the law, the imprisonment will not be considered false because there was probable cause for the arrest.

In terms of the defamation claim, Plaintiff did not specify the details of the defamatory statements. However, it appears that he alleges that the arrest itself and the circumstances surrounding the arrest were false, and thus that they were defamatory.  However, this claim fails in light of the fact that these statements were true because Plaintiff was convicted.

Even without regard to the above reasons for the entire failure of Count One in Plaintiff's Complaint, the Count still fails against the Defendant officers under qualified immunity. Preliminarily, Officers Torchia and Haar were not present at the marina and were in no way involved in the alleged scuffle that ensued or in the Plaintiff's arrest. As such, all three claims against them under Count One fail because they did not initiate the criminal proceeding or make the arrest.  The remaining officers, Alaimo, D'Anna and Pecelli, all meet the requirements for qualified immunity under these three claims. The factual allegations must be viewed in the light most favorable to the party claiming injury, which here is Plaintiff. However, since Plaintiff, "the non-moving party, fail[ed] to oppose [Defendants'] motion[s] for summary judgment by written objection, memorandum, affidavits [or] other evidence, the Court will accept as true all material facts set forth by [Defendants,] the moving party, with appropriate record support." Carp, 2002 U.S. Dist. LEXIS 2921 at *2 (quoting Anchorage Assoc., 922 F.2d at 175).

With regard to Count One, Officers Alaimo, D'Anna and Pecelli are entitled to qualified immunity. To the extent that Plaintiff alleges state law claims, for the reasons stated above, those claims fails. To the extent that Plaintiff alleges a Fourth Amendment violation of false arrest, it

fails because he was not falsely arrested. Since the arrest was proper because he was convicted, the qualified immunity analysis ends here and the officers are immune from Count One.

**B.  Count II- Excessive Force and Assault and Battery**

An excessive force claim must be evaluated under the Fourth Amendment standard of objective reasonableness, without regard to underlying motivation. See Graham v. Connor, 490 U.S. 386, 395-97 (1989). This requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396 (citation omitted). "Other relevant factors include the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997). Importantly, the Third Circuit rejects the proposition that "the absence of physical injury necessarily signifies that the force has not been excessive, although the fact that the physical force applied was of such an extent as to lead to injury is indeed a relevant factor to be considered as part of the totality." Id. (citation omitted).

In evaluating excessive force claims, courts must adopt an officer's "on the scene" perspective:

> The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving - about the force that is necessary in a particular situation.

Graham, 490 U.S. at 396-97 (citation omitted).

Finally, "[t]he reasonableness of the use of force is normally an issue for the jury." Rivas v. City of Passaic, 365 F.3d 181, 198 (3d Cir. 2004). "[A] police officer who is accused of having used excessive force is not 'precluded from arguing that he reasonably perceived the facts to be different from those alleged by the plaintiff,' but that *contention* . . . must be considered at trial.'" Id. at 199 (emphasis in original). Nonetheless, "defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." Kopec v. Tate, 361 F.3d 772, 777 (3d Cir. 2004) (citations omitted).

Plaintiff's Second Count alleges that while affecting his arrest and detention Defendant Officers Alaimo, D'Anna and Pecelli used physical force that was grossly excessive to the point that it constituted cruel and unusual punishment. The first issue to be addressed in determining whether these officers are entitled to qualified immunity is whether the record supports a finding that the Officers' use of force was objectively reasonable. The difficulty in this evaluation is that the supporting record corresponds with the events that the officers described, and those events present a very different scenario than what Plaintiff alleges. Defendants contend that the record reflects that once Plaintiff came out of his house, Officer Alaimo grabbed his hand and attempted to cuff him but Plaintiff pulled away and began moving back toward his house. (Police Report, Exhibit B). Officer Alaimo continued trying to handcuff Plaintiff, and due to his continued resistance the remaining officers, Pecelli and D'Anna, assisted in bringing him to the ground to subdue him. (Id.). Plaintiff was placed in the patrol car, brought to the station, and placed in a cell where his handcuffs were removed. (Id.). As the court in Carp indicated, so long as the defendants' factual allegations are appropriately supported, they will be taken as true.

Carp, 2002 U.S. Dist. LEXIS 2921 at *2 (quoting Ancorage Assoc., 922 F.2d at 175). The facts as presented by the Defendants are properly supported by the police report from September 2nd. Plaintiff failed to offer any support of injuries or excessive force to sustain his claim. In fact, the hospital record confirmed that he was brought into the emergency room for a short period of time but not admitted for any injuries. Plaintiff's allegations of dental work are equally unsupported by any evidence. All of the evidence here leads to the conclusion that Officers Alaimo, D'Anna and Pecelli used a reasonable amount of force that was necessary for the situation at hand. Additionally, Plaintiff was actively resisting arrest and pulling away from the officers, and placing him on the ground was the safest way to handcuff him. Since the Court is required under case law to examine the facts of this case through the perspective of the officers and the particular facts regarding Plaintiff's resistance to his arrest, the Court finds that the officers' conduct was reasonable.  Thus, qualified immunity also attaches to Officers Alaimo, D'Anna and Pecelli for this particular claim.

Additionally, Officers Haar and Torchia were not present for the arrest and therefore cannot be charged with excessive force during that arrest. While Officer Torchia was present in the prison after Plaintiff was brought in, he was not involved in the actual detention: he was the officer on duty once Plaintiff was being held.

With regard to the assault and battery claim, the Plaintiff does not explicitly allege a state law tort claim, but the phrase "assault and battery" is mentioned in the heading of his Second Count. Even if the Complaint can be construed as alleging an assault and battery claim, it fails because Plaintiff, as far as this Court is aware, did not file the New Jersey tort claim notice.

**C.   Count III- Failure to Administer Timely Medical Treatment and Deliberate Indifference to Serious Medical Needs**

Plaintiff's Third Count alleges that while he was in police custody the officers refused to take him to the hospital and left him in the police station for a significant period of time before calling an ambulance. Since prison systems have a duty to supply adequate medical care, Estelle v. Gamble, 429 U.S. 97, 103 (1976), the Eighth Amendment provides a constitutional basis for a § 1983 claim by prisoners alleging inadequate medical care. See Natale v. Camden County Corr. Facility, 318 F.3d 575, 580-81 (3d Cir. 2003). However, "[f]ailure to provide medical care to a person in custody can rise to the level of a constitutional violation [of the Eighth Amendment] under § 1983 only if that failure rises to the level of deliberate indifference to that person's serious medical needs." Groman v. Township of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995). Deliberate indifference refers to "a state of mind more blameworthy than negligence." Farmer v. Brennan, 511 U.S. 825, 835 (1994). The "deliberate indifference" standard is essentially a two-pronged test, requiring: (1) that the prisoner's medical needs be serious; and (2) that there be deliberate indifference on the part of the defendants. See Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979); Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

Notwithstanding, since Plaintiff was a pretrial detainee, the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, governs Plaintiff's claims for inadequate medical care. See Sylvester v. City of Newark, 120 Fed. Appx. 419, 423 (3d Cir. 2005). The Third Circuit finds that Due Process rights under the Fourteenth Amendment provide at least as much protection as Eighth Amendment protections for convicted prisoners. See Id.; see also Kost v. Kozakiewicz, 1 F.3d 176, 188 (3d Cir. 1993). Thus, the deliberate indifference

standard would also apply to pretrial detainees through the Fourteenth Amendment. See Natale, 318 F.3d at 581-82.

Officer Haar was not present at any time while Plaintiff was in police custody, and therefore this claim fails as it applies to him.

The remaining officers, Alaimo, D'Anna, Pecelli and Torchia were involved at some point between the time Plaintiff was arrested and the time he was taken to the hospital. Plaintiff claims that he had serious medical needs, which is the first prong of the test for failure to provide medical care. "A serious medical need is defined as 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" Bennett v. Div. of Immigration Health Servs., No. 054251, 2006 U.S. Dist. LEXIS 13784, at *5 (E.D. Pa. Mar. 28, 2006) (quoting Pace v. Fauver, 479 F.Supp. 456, 458 (D.N.J. 1979), aff'd, 649 F.2d 860 (3d Cir. 1981). Plaintiff alleges in his Complaint that he had his teeth knocked out, suffered permanent injury to his neck and back and sustained cuts that were bleeding profusely. However, due to the fact that the Defendants' motions for summary judgment remain unopposed, the factual allegations in their motions, so long as they are appropriately supported by the record, will stand. Plaintiff testified in his deposition that he did not make any of the officers aware of his alleged injuries prior to being asked by Officer Torchia if he was hurt, at which point Officer Torchia immediately called an ambulance. (Plaintiff's Deposition at 194, lines 16-22; 195, lines 13-15; 196, lines 13-22). Plaintiff also testified that he was not admitted to the hospital beyond the emergency room (Id. at 97, lines 9-25) and that he did not receive any medical treatment other than what he received in the emergency room (Id. at 106, lines 1-5). Plaintiff further testified that he needed, and received, dental work at some point in time after leaving the hospital, but the record is devoid of

any evidence of dental treatment. (Id. at 108, lines 2-17). Indeed, Plaintiff has not provided such evidence. Furthermore, Plaintiff confirmed that he had no previous injuries that were aggravated as a result of the arrest and detention. (Id. at 109, lines 14-19). Defendants do not mention any noticeable injuries in their statements indicating that a reasonable person would have noticed Plaintiff's alleged ailments. Based on these factual allegations supported by the evidence in this case, it does not appear   that Plaintiff had any serious medical needs.

Even if Plaintiff was able to establish serious medical needs, he would be unable to prove that there was deliberate indifference on the part of any of the police officers. "When a denial of an inmate's request for medical care causes 'undue suffering or the threat of tangible residual injury, deliberate indifference is manifest.'" Samuel v. First Corr. Medical, 463 F. Supp. 2d 488, 495 (D. Del. 2006) (quoting Lanzaro, 834 F.2d at 346, cert. denied, 486 U.S. 1006 (1988)). "The Third Circuit has found 'deliberate indifference' in a variety of circumstances, including where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refused to provide for it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Samuel, 463 F. Supp. 2d at 495 (citing Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993)).  However, in this case, Plaintiff was never actually denied medical attention because he never requested medical attention prior to his encounter with Officer Torchia. He admitted in his testimony that at no point in time did he tell any officer that he was injured, and only after Officer Torchia asked him in detention if he was hurt did Plaintiff requested medical attention. Upon this request, Officer Torchia immediately called an ambulance.

Moreover, even if Plaintiff had requested medical attention during his arrest, his subsequent treatment clearly shows that the defendant officers were not deliberately indifferent

to his medical needs, and therefore no constitutional violation was present. As such, Officers Alaimo, D'Anna, Pecelli and Torchia are not only entitled to qualified immunity, but Plaintiff fails to prove the elements of an excessive force claim under § 1983.

## IV.  Retaliation for Plaintiff's Past Filing of Administrative Charges Against Police Department

Plaintiff alleges in Count Four that "[t]he unlawful actions of the defendants . . . were undertaken . . . to retaliate against plaintiff for plaintiff's past filing of administrative charges against the Avon Police Department." (Plaintiff's Amended Complaint, ¶ 36). Plaintiff must prove three elements to withstand summary judgment:

> First, as a threshold matter, an inmate must establish that the conduct, which led to the alleged retaliation, was constitutionally protected. Then, the inmate must establish that he suffered an adverse action at the hands of the prison officials. An inmate satisfies the adverse action requirement by demonstrating that the action taken against him would deter a person of ordinary firmness from exercising his constitutional rights. Finally, the inmate must establish a causal link between the exercise of his constitutional rights and the adverse action taken against him. A causal link is established when an inmate shows that his constitutionally-protected conduct was a substantial or motivating factor in the prison officials' decision to take action against him.

Kounelis v. Sherrer, 529 F. Supp.2d 503, 530 (D.N.J. 2008) (citations omitted) (internal quotation marks omitted).

This claim fails on the first element of the claim. While "filing administrative complaints is constitutionally protected conduct," Id., Plaintiff did not actually file an official administrative complaint. He made two complaints to the Monmouth County Prosecutor's office. The first was regarding the execution of traffic stops by the Police Department on his property. He was directed to address the issue directly with the Police Department, and spoke with Officer Haar, who advised Plaintiff that he would try to "work it out." Plaintiff's second complaint alleged that

officers had entered his house and stole jewelry. Plaintiff received a call from Officer McGeedy, not a party in this case, who advised Plaintiff that he was free to press charges. However, Plaintiff did not file any official charges or complaints regarding either of these two incidents. Both were general verbal complaints about the Police Department, but he filed no written complaints.   However, even if Plaintiff's voiced complaints can be construed as official complaints, he would be unable to meet the third prong of the test. Arguably, Plaintiff meets the second element in that he was arrested and prosecuted, but he is unable to prove that his voiced complaints were a substantial or motivating factor in his arrest. Plaintiff has produced no evidence to support this factor. While "temporal proximity," Id. at 532, can be an indication of a causal connection, Plaintiff does not remember the dates of either of his two complaints. Additionally, the municipal court found Plaintiff guilty of the charges he was arrested and detained for, indicating that the arrest was not futile, and that Plaintiff's behavior on the day in question was the substantial and motivating factor in arresting him. Therefore, as Plaintiff cannot prove the elements necessary for a claim of retaliation, summary judgment is granted.

Based on the foregoing, Defendants' motions for summary judgment are granted.


DATED:  June 18, 2008



/s/ Freda L. Wolfson
FREDA L. WOLFSON, U.S.D.J.